(No. 13494.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DAVID O'CONNOR, Plaintiff in Error.

*Opinion filed December 21, 1920.*

1. CRIMINAL LAW—*when instruction for co-defendant is prejudicial.* In a prosecution of two defendants for the crime of rape where the evidence is conflicting as to whether the offense was committed, it is error to give an instruction requested by one co-defendant which the jury might construe to mean that the court assumed the other was guilty.

2. SAME—*what question and answer are proper for medical witness in prosecution for rape.* A medical witness in a prosecution for rape may be asked whether the injury to the private parts of the complaining witness could have been caused by sexual intercourse, and he may answer that it could have been produced by sexual relations. (*People* v. *Schultz,* 260 Ill. 35, distinguished.)

FARMER, J., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH SABATH, Judge, presiding.

CANTWELL, SMITH & CANTWELL, (THOMAS E. SWANSON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error, David O'Connor, was indicted, tried and convicted in the criminal court of Cook county in October, 1919, on the charge of rape and sentenced to the penitentiary for the term of one year.

The plaintiff in error was thirty-one years of age at the time of the alleged offense and lived a short distance from the home of the complaining witness, Irene Myers. She was then two months under sixteen years of age. They

had met casually, and, without having been formally intro-
duced, had become acquainted through these chance meet-
ings.    On the day in question the plaintiff in error tele-
phoned her at her home and asked her to go auto riding
with him.    She replied that she had to be at home very
shortly for the evening meal, and he told her that he would
get her back in time for that.    He later called and took
her for a ride, during which they stopped at a restaurant
near Humboldt Park, where they had something to eat and
drank some wine.    During their conversation Miss Myers
stated that she and her mother were looking for a flat, and
plaintiff in error said that he knew of a flat for rent and
asked her to go and see it, so that she could tell her mother
whether she liked it.    The flat was owned and occupied by
Louis Alberto, who wanted to rent it.    The plaintiff in error
called up Alberto on the telephone and asked if it would
be convenient for them to come and look at the flat, and on
being told that it was, they went there in the auto and were
let in by Alberto and shown through the flat and then were
conducted to the parlor, where the victrola was started and
to its music the complaining witness danced with plaintiff
in error and with Alberto.    They also drank some wine.
The complaining witness testified that O'Connor sent out
for more wine during the time they were there although she
stated that she did not wish any; that she had never drank
wine before; that the wine which was sent for was taken
to the kitchen and they (not specifying the particular indi-
viduals) came back with three glasses filled with a white
liquid; that the other parties drank theirs and a little later
she put her glass to her lips, and from that time knew
nothing that happened until two o'clock in the morning,
when she found herself in bed with plaintiff in error,
neither of them having any clothes on; that she asked for
a robe, saying she wished to go to the bath-room, but in
fact she went to the telephone and called up her mother's
place and talked with her sister, Mrs. Matthews, and told

her she did not know where she was but could give her the telephone number; that she asked Alberto, who came into the room, where she was, and he and plaintiff in error laughed, and Alberto said that she would have to go downstairs and look at the number; that he would not tell her where she was. The evidence shows that when Mrs. Matthews heard from Miss Myers she called up the information department of the telephone company, giving the operator the telephone number, and was given the name and address, and she went out and hunted up Mrs. Myers, who was investigating regarding her daughter's absence. They went with police officers to Alberto's house and found that the complaining witness and plaintiff in error and Alberto had left for the Myers home. In the meantime plaintiff in error had called up attorney Karasek, who had been his lawyer, and talked with him over the 'phone about the situation, stating that the girl said she would not go home with him, and this attorney testified that the complaining witness herself talked with him over the 'phone and told him that nothing had been done to her, but that she would not go home with the plaintiff in error because she was afraid he would not act the part of a gentleman. This testimony of Karasek is borne out by plaintiff in error and Alberto as to what complaining witness said over the 'phone.

Plaintiff in error testified on the trial that Miss Myers took sick at the Alberto flat after they had been drinking the wine and commenced to vomit and went from the parlor to the bath-room; that he caught hold of her and helped her and asked her if she didn't want to go home, and she said she did not but wished to lie down for awhile; that he took her into the bed-room, as the parlor was being cleaned up, and she lay down on the bed with her clothing on and asked him to lie down with her. Alberto testified that he found them lying on the bed at right angles to each other, she at the foot and he at full length, and that as there were two extra mattresses on the bed and another man by

the name of Helf in the flat, they took the two mattresses off and laid them on the floor in the parlor and Helf slept on them while Alberto slept in a chair. Alberto and this other witness testified on the trial that Miss Myers did not take off her clothes and that she and plaintiff in error were not in a nude condition in the flat.

When the complaining witness reached home her mother examined her and testified that she found blood on the lips of the vagina, and she also testified that the daughter's clothes were torn, her hair down and her face dirty. The next day the complaining witness was taken to the juvenile court and examined by Dr. Clara Seippel, who testified that there had been a recent injury to the private parts which could have been produced by sexual intercourse.

Plaintiff in error testified that he woke up about two o'clock and found Miss Myers out of the bed-room and was told by Alberto that she was telephoning; that he went to the room where she was telephoning and she said to him, "If you think you are going to get out of this cheap you aren't." Other statements of similar import he stated were made by her at the time she told him she did not want to go home with him. Mrs. Matthews' testimony as to statements made by plaintiff in error would indicate that there was something said about the payment of money and blackmail. The officers who arrested plaintiff in error in the presence of the complaining witness testified that her clothing was disarranged and she was in a disheveled condition.

It appears from the record that there were two trials of the plaintiff in error. On the first one the jury disagreed. There is testimony on this trial to the effect that the evidence of plaintiff in error was somewhat different on the two trials; that he practically admitted on the former trial that he was in bed with the complaining witness in a nude condition and that he was drunk on that evening. On this trial he denied both of these things. There is also testimony in the record that plaintiff in error had always previously

borne a good reputation. On this trial Alberto was tried with plaintiff in error and acquitted.

It is earnestly insisted by counsel for plaintiff in error that the verdict in this case was the result of passion and prejudice and not of impartial deliberation by the jury and that the evidence does not justify conviction, while counsel for the State insist that the evidence was of such a character as to justify conviction, regardless of any alleged errors urged by plaintiff in error. We express no opinion on the evidence, except to say that it was of such a nature that the rulings upon the legal questions involved should have been accurate. *People* v. *Pfanschmidt*, 262 Ill. 411; *People* v. *Scott*, 284 id. 465.

Counsel for plaintiff in error earnestly insist that two instructions given for the co-defendant, Alberto, assumed that plaintiff in error was guilty of the offense charged, and that these instructions were very prejudicial to plaintiff in error. One of these instructions reads:

"The court instructs the jury that if you find from the evidence that the said alleged offense was not committed by the said Louis Alberto, his mere presence at the place of the commission of the alleged felony is not sufficient to constitute him a principal, unless you further find from the evidence that there was something in his conduct showing a design to encourage, incite or in some manner aid, assist or abet the same. The court further instructs you that aiding, abetting or assisting are affirmative in their character, and that it is not sufficient that there be a mere negative acquiescence not in any way made known to the defendant O'Connor."

We are of the opinion that this instruction assumes that the offense had been committed and that plaintiff in error had a part in committing the offense. Instruction 30, also complained of, is open to a somewhat similar criticism. Plaintiff in error and Alberto both denied that either of them had sexual relations with the complaining witness on

the night in question or that they or either of them had aided, assisted or abetted such relations on that occasion. The question whether they had had such relations was a vital point in the case, and these instructions, which might be fairly construed to mean that the court assumed that O'Connor was guilty of the offense, were prejudicial to plaintiff in error. This court has repeatedly held that where the facts are controverted and the evidence is conflicting it is error to assume the truth of such controverted facts. (*People* v. *Novick,* 265 Ill. 436; *People* v. *Feinberg,* 237 id. 348; *People* v. *Pezutto,* 255 id. 583.) It was exclusively the duty of the jury to pass on the question whether either Alberto or O'Connor, or both of them, were guilty of the offense charged. We cannot agree with the argument of counsel that the guilt of plaintiff in error was so clearly shown that even though these instructions are held erroneous the judgment of conviction should be affirmed.

It is also urged that reversible error was committed by the court in permitting Dr. Seippel to answer a question as to the condition of the private parts of the complaining witness being caused by sexual intercourse. The question and answer were that the injury could have been produced by sexual relations with a male. This is entirely different from the question asked and answered in *People* v. *Schultz,* 260 Ill. 35, which was, in effect, that the condition of the sexual organs, in the opinion of the medical witness, was the result of rape committed upon the female. We do not think any error was committed in permitting Dr. Seippel to answer the question here under consideration.

For the errors indicated the judgment of the criminal court is reversed and the cause remanded.

*Reversed and remanded.*

Mr. JUSTICE FARMER, dissenting.