(No. 14016.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD WALINSKY, Plaintiff in Error.

*Opinion filed October 22, 1921—Rehearing denied Dec. 9, 1921.*

1. CRIMINAL LAW—*each party to a conspiracy is a party to all acts in furtherance of the common design.* Every person entering into a conspiracy, or a common design which has already been formed, is deemed in law to be a party to all acts done by any of the other parties before or after the time of his entering into the conspiracy, if such acts be in furtherance of the common design.

2. SAME—*what is proof of participation in larceny.* Evidence that certain parties entered into a conspiracy for the stealing of certain goods, that one of them sent a message to the defendant to meet him for the purpose of furthering the act of stealing the goods, that the defendant in pursuance of the call met said party and conspired with him and the others to find a place in which to secrete the goods, is sufficient to show the defendant's participation in the larceny.

3. SAME—*when parties agree to commit a felony, which is consummated, all are guilty.* Where two or more persons agree generally to commit a felony, and a felony is committed pursuant to such agreement, all are guilty.

4. SAME—*when instruction may assume that goods were stolen.* An instruction on the law concerning accessories before the fact is not objectionable because it assumes that a larceny was committed, where such fact is clearly established by the evidence and the only question is as to the defendant's participation in the crime.

5. SAME—*court should avoid giving impressions to the jury as to guilt of accused.* In a criminal case the trial court must exercise

scrupulous care to avoid giving any impression to the jury con-
cerning the guilt of the accused that will in any way influence the
verdict.

6. SAME—*when cross-examination of a witness is not unduly
restricted.* Refusal of the trial court, on cross-examination of a co-
defendant who is testifying for the People in a prosecution for lar-
ceny, to allow the defendant to show that the witness' employer
signed his bond is not error, in the absence of any proof connect-
ing the employer with the prosecution of the case or of any prom-
ise of immunity on his part to the witness.   .

WRIT OF ERROR to the Criminal Court of Cook county;
the Hon. CHARLES M. THOMSON, Judge, presiding.

JOHN R. MCCABE, (THOMAS E. SWANSON, of coun-
sel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E.
CROWE, State's Attorney, and JAMES B. SEARCY, (E. E.
WILSON, of counsel,) for the People.

Mr. CHIEF JUSTICE STONE delivered the opinion of the
court:

The plaintiff in error seeks to review the record of
a conviction for larceny against him in the criminal court
of Cook county under an indictment charging him, together
with certain other persons, with larceny and receiving stolen
property.   There were six co-defendants, all of whom
pleaded guilty and were called as witnesses for the State.
Plaintiff in error contends that the proof did not show him
to be guilty of larceny, as found by the verdict of the jury,
and that errors were committed in instructions to the jury
and in the conduct of the trial.

It appears from the testimony of the State's witnesses
that on July 4, 1920, Edward Kelso, Robert McGowan and
August Krause, co-defendants, conspired to steal and dis-
pose of certain property which Kelso was to haul for the
Dixon Transfer Company on July 6 following, such prop-

erty being certain bundles and boxes of woolen goods. The plaintiff in error was not at this meeting. It also appears from such testimony that during the last week in June next preceding, plaintiff in error met Kelso during the noon hour at the place where Kelso fed his horses and suggested to Kelso that he was in the habit of buying goods from teamsters; that he was a good fellow and no one need fear getting in trouble by dealing with him; that later on that day plaintiff in error rode on the wagon with Kelso and talked with him about property which Kelso might have on the wagon in the future, Kelso testifying that plaintiff in error told him to call him up on the 'phone and ask for "Morris," and that on July 6 he called up plaintiff in error at the telephone number given him. In this he is corroborated by Julius Friedman, who testified that he received the call, stating that Dixon's driver wanted plaintiff in error at Union and Quincy streets, and that he delivered the message to plaintiff in error. Kelso also testified that on that day he had on his wagon the woolen goods involved in this case; that he saw plaintiff in error at Clinton and Market streets; that plaintiff in error gave him a signal, from time to time, as to the direction in which to drive; that Kelso later got off the wagon and went into a hallway and met plaintiff in error, who asked him what he had, and he replied he had some woolens but didn't know how much; that plaintiff in error said he did not have a place to put the woolens but would see a friend and see if he could get the stuff into a barn or house; that this was at about eleven o'clock in the forenoon. In this Kelso was corroborated by Krause and McGowan, who stated that they met plaintiff in error on VanBuren street between Halsted and Green streets on July 6, and that he went to find a place to put the stolen goods and came back stating that he could not find such a place. It also appears from the testimony for the State that the goods were later stored in the barn of one Dumke; that later plaintiff in error came to Dumke's

place in company with another man and met Krause and McGowan, and an agreement was made whereby he was to take the goods and pay Kelso, McGowan and Krause the sum of $2050, and that he would return the next morning for the goods, with the money. It appears, however, that he did not return. A portion of the goods was disposed of and the rest returned to the transfer company upon the arrest of the guilty parties. Plaintiff in error denied this testimony and also denied having known or seen the other defendants, and stated that he was in Waukegan on July 6 from early morning until late in the evening. In this he is partly corroborated by the witness Alexander Hoffman, who testified that he went to Waukegan with plaintiff in error on the morning of July 6, arriving there at 9:30 A. M., but that he did not return to Chicago with plaintiff in error, having separated from him upon their arrival at Waukegan.

We are convinced that the jury were justified in believing that plaintiff in error met Kelso and the other co-defendants at the time the stolen goods were on the wagon and assisted in secreting them and later returned and agreed to purchase them. Plaintiff in error contends, however, that this does not constitute larceny; that as he had no connection with the original conspiracy to steal the property, which was entered into by the co-defendants Krause, Kelso and McGowan on July 4, and the larceny having actually taken place when the goods were converted on the truck, it is not possible that he could have been guilty of conspiracy or accessory before the fact to the crime of larceny, and that if the record shows anything it shows an attempt on his part to receive stolen property knowing the same to be stolen.

It is the rule in this State that in order to be guilty of conspiracy one need not be present at the time of the consummation of the act which has been planned. Every person entering into a conspiracy or common design which has already been formed is deemed in law to be a party to

all acts done by any of the other parties before or after the time of his entering into the conspiracy, if such acts be in furtherance of the common design. (*People* v. *Hedge,* 284 Ill. 513; *Spies* v. *People,* 122 id. 1.) In this case, prior to the actual stealing of the goods, Krause, McGowan and Kelso had entered into a conspiracy for that purpose. When the goods were loaded onto the wagon Kelso sent a message to the plaintiff in error, which the record shows was delivered to him, to meet him for the purpose of furthering the act of stealing the goods. It appears that plaintiff in error, in pursuance of that call, met Kelso, and conspired with him, McGowan and Krause to find a place in which to secrete the goods. This is proof of his participation in the act of the larceny itself. Moreover, in his previous conversation with Kelso plaintiff in error had suggested that Kelso call him by telephone when he had goods which he could steal, and gave him a telephone number which the evidence shows Kelso used and did call plaintiff in error in pursuance of that agreement. The rule is that where two or more persons agree generally to commit a felony, and a felony is committed pursuant to such agreement, all are guilty. (*People* v. *Bond,* 291 Ill. 74.) The jury were justified in returning a verdict finding the plaintiff in error guilty of larceny.

It is argued that the court erred in the giving of two instructions, numbered 3 and 6. The latter instructed the jury on the law concerning accessories before the fact, and it is not contended that the law concerning accessories is not correctly stated in the instruction, but the argument is that the instruction assumes that a larceny was committed, and that it therefore invaded the province of the jury. It is well settled that the court may assume facts as proven which the uncontroverted evidence shows to be true. There is no doubt as to the fact of the larceny of these goods. Counsel do not contend in argument that there was any doubt as to that matter, nor was there any such contention

on the trial.   It follows that no prejudice arose in this case from the assumption of the fact that the goods were stolen. In this it differs from *People* v. *O'Connor*, 295 Ill. 198, cited by plaintiff in error in support of his contention that the instruction was wrong.   Instruction No. 3 complained of, informed the jury that property may be averred in an indictment to be the property of either the real owner or any person having special property in it as bailee, and the argument is that the instruction is misleading.   While the instruction is not clearly drawn, we are satisfied that it is not open to the objection urged.   There was no error in instructing the jury.

It is also contended that the court erred in its conduct of the trial of the case, plaintiff in error contending that the attitude of the court was that of leaning toward the prosecution.   While it is a high duty on the part of a court, to be carried out with scrupulous care, to avoid giving any impressions to the jury that would in any way influence their verdict, we are convinced on examination of the record that the action of the court is not open to this criticism.

It is also contended that the court limited the cross-examination of the accomplices in the case, and that the plaintiff in error should have been given the opportunity for a wider range of cross-examination.   In support of this objection counsel point out that they sought to show that Dixon, the employer of the defendant Kelso, had signed his bond.   In the absence of any proof connecting Dixon with the prosecution of the case or of any promise of immunity on his part to Kelso it was immaterial whether or not he signed the bail bond of Kelso, and would not tend to show the attitude of the State with reference to the prosecution of Kelso on this charge.

On examination of the whole record in this case we are convinced that there is no reversible error in it, and the judgment will be affirmed.          *Judgment affirmed.*