(No. 27380.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN MULFORD *et al.*, Plaintiffs in Error.

*Opinion filed Nov. 16, 1943—Rehearing denied Jan. 13, 1944.*

A. W. Schimmel, of Pittsfield, and A. M. Fitzgerald, of Springfield, for plaintiffs in error.

George F. Barrett, Attorney General, and Edwin Johnston, State's Attorney, of Pittsfield, for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiffs in error, John Mulford and Jesse Hull, were indicted in the circuit court of Pike county. The first count of the indictment charged them with larceny in Pike County, Illinois, of seven black-and-white-spotted hogs of the value of $140, the property of Lee Stout. The second count charged them with larceny of the same hogs in Brown county and the subsequent transportation of said hogs into Pike county. By the third count they were charged with receiving said hogs for their own gain, knowing the same to have been stolen. Both defendants pleaded not guilty and were tried by a jury. After the close of all the evidence and before the cause was submitted to the jury, the State's attorney entered a *nolle prosequi* as to the first and second counts of the indictment. Defendant Hull then presented his motion to direct the jury to find him not guilty. This motion was overruled. Both defendants were found guilty. Motions for a new trial and in arrest of judgment followed. These motions were also overruled, and the cause is brought here for review.

It is contended by plaintiff in error Hull that the evidence is wholly insufficient to sustain the verdict against him. He claims his guilt has not been established beyond a reasonable doubt, and that the trial court erred in overruling his motion to direct a verdict.

During the night of March 17, 1943, seven black-and-white-spotted hogs were stolen from the premises of Lee Stout in Brown county. About ten o'clock on the night of March 18, 1943, plaintiff in error Mulford left seven black-and-white-spotted hogs and three red hogs at a farm in Pike county, owned by his mother and occupied by Melvin Harris and his wife, whom he awakened by knocking on the door. He told them he had some hogs which he wanted to put in the barn until the roads were

better so he could take them home. Harris testified that he asked Mulford if he needed any help, and he replied, "No, Jesse is with me." Mulford denied making this statement and also denied Hull was with him at the time. It was sleeting, raining, and a cold, strong wind was blowing. Harris talked to Mulford without opening the door, and he neither saw nor heard any other person. The next morning Mulford and Hull drove to the Harris place in Mulford's car. Hull went to the barn, got a team and wagon of Mulford's which was there, and left. Mulford went to the house and engaged in conversation with Mrs. Harris. He told her he got the hogs northeast of town, had hauled them in the back of his car, making three trips, and that Jesse had pushed him. Saturday, March 20, Stout, accompanied by the sheriff of Brown county, went to the Harris place, examined the hogs and identified and claimed the seven black-and-white ones.

Plaintiff in error Mulford when questioned about the hogs by the sheriff and his deputy said he had bought them from some fellow whose name he did not know. He first stated he had bought them at Franklin, southeast of Jacksonville, Illinois, and had hauled them in his car, making three trips. When the sheriff suggested to him that was a long distance for three trips, he then said it was at the curve of the road near Winchester. When asked if he was sure of that, he said, "no, it was at Finson's garage, a quarter of a mile west of Pittsfield." Then he said, "no, it was on the road by the brick house west of the cemetery." Finally he told them it was at the "Y" four miles west of Pittsfield. When asked what he paid for them, he said he did not know exactly, he paid for them in cash, and thought it was $140. He next said he thought he paid $160, and finally told them he paid $175. When told by the sheriff and his deputy that his explanations were not satisfactory, he offered them first

$200, then $300, and finally $500, if they would release him and drop the matter. Mulford, when testifying, admitted that he lied to the sheriff and said that he did so in order to play for time.

Mulford testified that on Thursday afternoon, March 18, he and Hull were at Dunham's garage at Winchester, that he had gone there to engage a truck for hauling corn, and Hull, who often did long-distance hauling for Dunham, was there to have a settlement of wages. He testified that he went to a tavern for lunch, from there to another tavern where he played the slot machine, and then started to go to the Curve Inn tavern. While on his way he was stopped by a man repairing a flat tire on a red Chevrolet truck parked by the side of the road. The man asked to borrow a wrench. He said he was from Franklin, Illinois, and named several persons there, two of whom Mulford knew. He said he had ten hogs in his truck which he had bought reasonable and would sell reasonable. He offered them to Mulford at thirteen cents a pound on a total estimated weight of 1530 pounds. Mulford thought the estimated weight too low, and he knew the market price of hogs was around fifteen cents. He agreed at once to buy the hogs at that price, and it was arranged that the stranger was to bring the hogs to a designated place in Pittsfield where Mulford would meet him at nine o'clock that night. It was then between four and five o'clock, and Mulford went directly to the Dunham garage, picked up Hull, who was there ready to go home, and they left immediately for Pittsfield. He said nothing to Hull of his purchase. At Pittsfield, Hull got out of the car and started walking toward his home in the country. Mulford remained in town, and met the man at nine o'clock at the place agreed upon. From there Mulford drove to the Harris place, and the man followed with the hogs. After they were unloaded, he collected $198.90 from Mulford in payment, got in his truck and left. Mulford did not

know his name, had never seen him before, and has never seen him since. Mulford did not ask him his name nor where he had bought the hogs.

Plaintiff in error Hull testified that on Thursday, March 18, he drove with Mulford to Dunham's garage at Winchester, that Mulford wanted to see Dunham about engaging a truck to haul corn and Hull wanted to see him about a settlement for wages, that after Mulford completed his business with Dunham, he left the garage, but Hull remained there until about five o'clock when Mulford came in, asked him if he was ready to go home, and they drove back to Pittsfield, where Mulford let him out of the car and he started to walk home. Ellis Spann met him at the edge of Pittsfield, picked him up in his car and took him as far as the schoolhouse. He walked from there to his home, a distance of about three quarters of a mile, arriving there before dark, and did not leave until the next morning. He saw some hogs in the Harris barn when getting the team and wagon on the morning of the nineteenth, but paid no attention. He testified he knew nothing of Mulford's purchase of the hogs and knew nothing of any hogs being taken to the Harris farm. None of his evidence is contradicted, and much of it is corroborated by disinterested witnesses.

There is no evidence in the record, direct or circumstantial, warranting the jury in finding that Hull ever received or had possession of the hogs in question. In order to sustain a conviction for the offense of receiving stolen property, potential possession at least must be shown. It is essential that the accused, if he has not the actual physical possession of the property, must have some measure of control or dominion over its custody. (*People* v. *Poncher*, 358 Ill. 73.) The theory of the prosecution is that a conspiracy existed between the two defendants to receive the stolen hogs for their own gain, and therefore all acts and declarations of Mulford in furtherance of

their common design are to be deemed the acts and declarations of Hull. We agree that the law is as claimed by the People and as lately pronounced by us in the case of *People* v. *Meisenhelter,* 381 Ill. 378, that a conspiracy need not be proved by direct evidence of an express agreement to do the unlawful thing to be accomplished; that the commission of the crime may be proved, not only by direct evidence but as well by inference from conduct which discloses a common design on the part of the accused to act together in pursuance of the common criminal purpose; and that where a conspiracy is established, every act or declaration of any of the conspirators in furtherance of the common purpose is regarded as the act or declaration of each of them and may be proved as against all. To connect plaintiff in error Hull with the crime charged the People proved that he and Mulford were friends and associates, that he occasionally worked for Mulford on his farm, that he frequently rode with Mulford in his car, and that they had each day since the preceding Monday made one or more trips together in Mulford's car. Circumstances arousing a mere suspicion of guilt are insufficient. Conspiracies cannot be established by a mere suspicion, nor does evidence of mere relationship between the parties, or association, show a conspiracy. (15 Corpus Juris Secundum, pp. 1150-1151.) The only testimony in the record in any way tending to prove that Hull had participated in the receiving of stolen property was that of Mr. and Mrs. Harris. From their testimony it only appears that Mulford told them Hull was with him when the hogs were left at their home. Neither Harris nor his wife saw or heard Hull on that occasion. These statements of Mulford were made outside Hull's presence, and we find them wholly wanting in probative force to establish his guilt. It was error for the trial court to overrule the motion to direct a verdict of not guilty as to the plaintiff in error Jesse Hull. The verdict of the jury

that he was guilty of receiving stolen property is based on no evidence whatever, and as to him the judgment must be reversed.

We are next to consider the contention of plaintiff in error Mulford that the evidence is not sufficient to prove beyond a reasonable doubt that he received the hogs knowing them to have been stolen. To sustain a conviction for receiving stolen property the property must be identified as stolen, the person charged must be shown to have received it, or aided in concealing it, knowing it was stolen, and that he so received it for his own gain or to prevent the owner from again possessing it. (*People* v. *Rife,* 382 Ill. 588; *People* v. *Grizzle,* 381 Ill. 278.) These elements of the crime must, of course, be established beyond a reasonable doubt.

It is claimed that the hogs were not identified beyond a reasonable doubt, and that the court erred in permitting Lee Stout to testify that he identified the hogs as his own. There can be no doubt of the sufficiency of the proof of the hogs' identity by the testimony of the witness Stout. He testified to peculiar markings, appearance, size, weight, their behavior in the strange surroundings where he found them and their behavior after he had taken them to their former home, and unequivocally identified them as his own. This was not error.

It is also claimed that the trial court erred in permitting the witness Fred Conkright to testify that the three red hogs found in Mulford's possession had been stolen from him. No objection to this testimony was made during the trial and the point now urged was not preserved for review. It has long been settled that a defendant can not complain in a reviewing court of the introduction of testimony where no objection was made at the time. *People* v. *Wise,* 379 Ill. 11; *People* v. *Lanie,* 378 Ill. 320.

Counsel for plaintiff in error Mulford present the argument that if Mulford be guilty of any crime it is that of

larceny, and such being the case, he cannot be guilty of the crime of receiving stolen property, as he could not receive the property from himself. There is no evidence in the record that Mulford stole the hogs. He and also his mother and father testified that he was at home from five o'clock in the afternoon of March 17 until the next morning. The record shows that the theft of the hogs occurred on the night of March 17 and was committed by some person other than Mulford.

Mulford next contends there is no proof that he knew the property was stolen when he received it. The guilty knowledge which is an essential element of the crime of receiving stolen property is rarely susceptible of direct and positive proof. It may be inferred from all the surrounding facts and circumstances involved in the transaction, including the acts and declarations of the accused concerning the same; (*People* v. *Boneau,* 327 Ill. 194;) and it is presumed that whatever would convey knowledge or induce belief in the mind of a reasonable person that property was stolen would, in the absence of countervailing evidence, be sufficient to apprise the accused of the like fact or induce in his mind the like impression and belief. (*People* v. *Rife,* 382 Ill. 588; *State of Connecticut* v. *Heno,* 119 Conn. 29, 174 Atl. 181, 94 A. L. R. 696.) It must be conceded that the conduct of Mulford is entirely inconsistent with innocence. His contradictory statements, his attempt to bribe the sheriff and his deputy to drop the matter, his purchase of the hogs for considerably less than their actual value from an unknown person without any inquiry as to the source of his title, and his secrecy in concealing their purchase from his codefendant Hull on their drive home are all circumstances tending to show his guilty knowledge. The evidence, in our opinion, amply justified the jury in believing the defendant guilty beyond all reasonable doubt.

It is assigned as error that the venue was not proved as laid in the indictment. There is not the slightest basis for Mulford's claim that the act of receiving took place at Winchester in Scott county. The hogs were never in his possession, either actual or potential, in Scott county.

Another error assigned is that the verdict is defective and insufficient in that it finds the defendants guilty of an offense not charged in the indictment. The defendants are charged in the indictment with receiving stolen property for their own gain. The verdict finds them guilty of receiving stolen property for their own gain and to prevent the owner from again possessing the same. Section 239 of division I of the Criminal Code, (Ill. Rev. Stat. 1941, chap. 38, par. 492,) under which plaintiffs in error were convicted, sets out in the disjunctive the different acts by which one may be guilty of the crime of receiving stolen property. The statute creates but a single offense, and the indictment may charge the defendant with committing any or all of the acts as one offense. (*People v. Weinberg*, 361 Ill. 537.) The crime is complete whether the accused commits only one or two or all of the acts denounced by the statute. (*People v. Calcione*, 369 Ill. 154.) Under the indictment as drawn it was not necessary to a conviction that the jury find the plaintiffs in error guilty of receiving the stolen property to prevent the owner from again possessing the same, and that part of the verdict may be disregarded as surplusage. It has always been held that where the findings of the verdict are sufficient to determine the defendant's guilt of the crime charged in the indictment, any unnecessary part of it may be disregarded as surplusage. *People v. Johnson*, 360 Ill. 605.

Plaintiffs in error object to instructions Nos. 3, 6, 11 and 15 given on behalf of the People. Instruction No. 3 related to the knowledge of plaintiffs in error, Mulford and Hull, that the hogs had been stolen. It is objected

to on the grounds that it assumes that the hogs were stolen, that it assumes that the evidence was sufficient to show the defendants knew the hogs were stolen, and that it draws no distinction between Mulford and Hull and gives the jury no choice to find one guilty and the other innocent. The instruction is not subject to any of the criticisms. It advised the jurors that if they believed, beyond a reasonable doubt, the hogs had been stolen and that the defendants received the hogs, in determining whether they knew they were stolen they were to consider all the facts in the case and the circumstances surrounding the transaction, and that it was not necessary that knowledge should be derived from their personal observation or from information given by others who knew the facts of such stealing, but the guilty knowledge might be inferred from facts in evidence if at the time they received the hogs they knew facts as shown by the evidence which would impress an ordinary reasonable man that the property had been stolen, and if the defendants received the property under such circumstances as would satisfy a man of ordinary observation, intelligence and caution that it had been stolen, the jury would be authorized to find that the defendants knew that fact. A similar instruction in the case of *People* v. *Grove,* 284 Ill. 429, was held not subject to the objection that it assumed facts, but to be a correct statement of the law. Neither do we believe that this instruction would lead the jury to believe that it must find both defendants guilty or both innocent, especially when considered in connection with defendants' given instruction No. 1 that a verdict of guilty should not be rendered against either defendant unless each and every one of the material elements of the crime had been proved beyond all reasonable doubt, and defendants' given instruction No. 11 that if Hull had established an alibi, he should be acquitted. Furthermore, if the effect of this instruction on the jury should be as claimed, a view of the utter

lack of any evidence connecting defendant Hull with the crime, the defendant Mulford would have no cause for complaint.

People's instruction No. 6, objected to, is general in language and states the legal proposition that if two or more are engaged in the prosecution of a felony, each is responsible for the acts of the other in the prosecution of such felony. It does not assume that the plaintiffs in error are engaged in prosecuting the crime of receiving stolen hogs, but states the law applicable to the People's theory of the case. Instruction No. 11 is objected to because it assumes the hogs were stolen by someone other than plaintiffs in error. The evidence establishes this fact without contradiction. The court, in instructing the jury, may assume facts to be proved which the uncontroverted evidence shows to be true. *People* v. *McCarthy*, 313 Ill. 303; *People* v. *Walinsky*, 300 Ill. 92.

Instruction No. 15 is as follows: "You are further instructed that in this case it is not necessary for the people to prove that the defendants, John Mulford and Jesse Hull, knew that the goods and chattels were stolen from Lee Stout; it is sufficient if the people show beyond a reasonable doubt that the goods were stolen from Lee Stout and that the defendants knew they were stolen, and for their own gain received the said goods." It is insisted that according to this instruction if it is shown beyond a reasonable doubt that the hogs in question had been stolen from Lee Stout and the defendants had received them, it would not be necessary to prove that they knew they were stolen at the time they received them. This is a misconstruction. The instruction expressly requires proof beyond a reasonable doubt that the defendants knew the hogs were stolen, but informs the jury that it is not necessary to prove the defendants knew from whom stolen.

Plaintiffs in error also complain of People's given instructions Nos. 4, 5, 8, and 9. Instruction No. 4 defined

the crime of larceny in the language of the statute. Instruction No. 5 stated that where property is stolen in one county and carried into another, the jurisdiction shall be in any county into or through which the property may have passed or where the same may be found. By the eighth and ninth instructions given for the People the jurors were told that if they believed beyond a reasonable doubt that the hogs were stolen from Lee Stout in Brown county and by the persons who stole them brought into Pike county, that such persons could be tried in Pike county or any other county in which the hogs were found. It is claimed the giving of these instructions was misleading and confusing to the jury in that they had reference only to the crime of larceny and the State's attorney had entered a *nolle prosequi* to the larceny counts. In reply the People argue that inasmuch as the allegation in the indictment that the hogs were stolen is required to be proved, it was proper for the court by these instructions to fully advise the jury in regard to the crime of larceny. This argument might have some weight as to instruction No. 4, but instructions Nos. 5, 8, and 9 have no application whatever to the case. The trial court should have confined the instructions to the crime charged. A defendant is entitled to have the jury so instructed that it may not become confused as to what constitutes the issue before it, (*People* v. *Schyman,* 374 Ill. 292,) but where it appears that such confusion could not reasonably arise from the giving of inapplicable instructions concerning crimes not charged against the accused, it is not prejudicial error. In this case during the trial until the close of the evidence the plaintiffs in error stood charged with the crime of larceny as well as that of receiving stolen goods. After the conclusion of all the evidence, from which it was plainly apparent that the theft was committed by someone other than the accused, the State's Attorney, in the hearing and pres-

ence of the jury, dismissed from the case the two counts charging larceny. In addition to this the attention of the jurors was also called to the fact by the second instruction given which again so informed them and directed them that they were only to consider the count charging the defendants with the crime of receiving stolen property. In this state of the record we do not think there can be any reasonable presumption that the jury might have been confused as to the issue to be proved by the People. Error, where not prejudicial to the party complaining, is no cause for reversal.

Upon a careful consideration of the record and for the reasons we have indicated, the judgment of the circuit court is affirmed as to the defendant John Mulford, and reversed as to the defendant Jesse Hull.

*Affirmed as to Mulford and reversed as to Hull.*