STATE v. JOHN L. STROUD.

*Accomplice—Evidence—Indictment—Larceny—Receiving—*
*Verdict.*

1. It is settled law in this State, that a person may be convicted upon the unsupported evidence of an accomplice, if such evidence satisfies the minds of the jurors of the guilt of the accused.

2. A general verdict of guilty upon an indictment containing two counts—one for Larceny and the other for Receiving—will be sustained, if the evidence justifies either.

3. There are no accessories before the fact in larceny; all who aid, abet, advise or procure the crime, are principals.

4. To constitute the crime of Receiving it is not necessary that the stolen goods should be traced to the actual personal possession of the person charged; it is sufficient if it be shown that they were received by his agent or servant, or at his instigation deposited in some place directed by him, he knowing that they were stolen.

(*State* v. *Tyler*, 85 N. C., 569; *State* v. *Fox*, 94 N. C., 728; *State* v. *Long*, 7 Jones, 24; *State* v. *Beatty*, Phil., 53; *State* v. *Weir*, 1 Dev., 363; *State* v. *Borden*, Ibid., 518; *State* v. *Haney*, 2 D. & B., 407, cited and approved).

This was a CRIMINAL ACTION, tried before *Clark, Judge*, at the August Term, 1886, of the Superior Court of LENOIR county.

The indictment contained two counts, one for stealing a hog, and the other for receiving the same, knowing it to be stolen. The defendant was indicted with one Howard. They were both convicted, the verdict being general, and after sentence, the defendant Stroud only appealed.

There was no evidence offered on the part of the defendants. That introduced by the State was as follows: Timothy Spence testified, that Stroud told him to get Howard and go on a certain night and get the hogs out of Uzzel's pen; that he did so, and reported the fact the same night to Stroud, who said—"kill them and put them in my smoke-house"; then he (Stroud) said—"there would be a search warrant out, and to put the meat under a hogshead in an old still-house," which was back of Stroud's house and near the line of Stroud's land, but there was conflicting evidence as to which side of the line the still-house was situated; that he carried the meat, in company with Pat Stewart, and put it in the still-house, as directed by Stroud; that since this indictment, Stroud told him that he had heard that he (witness) would turn state's evidence, and to keep his mouth shut.

Pat Stewart testified, that he saw the hogs knocked down and stuck; it was at night, and they were carried to the field back of Stroud's; the next night Spence met him there coming from the direction of Stroud's house, and told him to

carry the meat to the still-house, and he carried it there in a cart.

Charles Holland testified, that a week or two after that, Stroud was complaining that some meat he had at the still-house was gone, and wanted to know if he knew what had become of it; that Spence said the meat was gone, and he would give one hundred dollars to know what had become of it.

James Hardy testified, that Stroud came to his house after the indictment was found, and said that he understood that Spence had turned state's evidence about Uzzel's hogs, and if he had, he would ruin him, because Spence knew all about it. Afterwards, in same conversation, Stroud said he would not mind it if Spence would tell the truth.

Bryant Rouse testified, that he heard Stroud say that he knew the barrel at the still-house that the meat was in. Stroud then charged that Charles Holland had stolen the meat out of the still-house.

Walter Spence testified, that he went with his father the night the hogs were stolen, and saw Howard and Stewart kill them; the next night he went with his father to Stroud's, and in going met Richard Rouse on the road. Stroud first told his father to carry the meat to Charles Holland's, but after studying awhile, he told him to carry it to the old still place. They went to the place where the hogs were, and told Pat Stewart what Stroud said, and together they carried the meat in a cart to the still-house as directed by Stroud. The hogs were stolen and cleaned on Tuesday night, and on the next night they were carried as directed by Stroud to the still-house.

Richard Rouse testified, that he met Timothy Spence and Walter Spence going towards Stroud's at night, and the next day, attracted by the flight of some buzzards, he saw where some hogs had been cleaned, at the place described by the other State's witnesses as the place where the hogs had been

cleaned, and he also saw a cart tract going thence towards the still-house.

There was also evidence that the general character of James Hardy was good.

The defendant's counsel asked for several special instructions to the jury, to-wit:

1. That to convict the defendant of larceny, the jury must be satisfied that he was present at the time of the commission of the offence, or so near by that he could give aid and comfort to the party actually doing the stealing; that the jury cannot convict the defendant under this bill of indictment, unless they find as a fact that he was present at the commission of the offence.

The Court declined to give this instruction, and instead, charged that all persons aiding, counseling and abetting a larceny, whether present at the commission of the offence or not, are principals, and equally guilty with the party actually committing the larceny, and if the jury believe beyond a reasonable doubt, that Stroud counseled and procured the hogs to be stolen, he was as guilty, though not immediately present.

To this charge and refusal to give the charge as requested, the prisoner excepted.

2. At the request of the prisoner the Court charged: That to convict him of receiving stolen goods, he must actually have received the goods, and known at the moment of receiving them that they were stolen. But the Court added, that "if the prisoner Stroud directed the meat to be carried to a certain place near his home, knowing that it was stolen meat, and it was so carried and put there by his orders, it was a receiving in law." To this modification the prisoner excepted.

3. The prisoner asked the further instruction, that the jury ought not to convict upon the unsupported testimony of an accomplice.

This the Court refused to give, and charged instead: "That the jury ought to be cautious and careful about convicting upon the unsupported evidence of accomplices; but they were the sole judges of the testimony; they were to say whether the testimony offered by the State to corroborate the testimony of Timothy Spence and his son, and Pat Stewart was to be believed, or any part of it, and how far it corroborated them. Thus while a jury should be slow to convict upon the unsupported testimony of accomplices, yet it would justify a verdict, if it was sufficient in their minds to produce an entire conviction of the prisoner's guilt beyond a reasonable doubt." To the charge as given, and the refusal to give that prayed, the prisoner excepted.

The *Attorney-General*, for the State.
*Mr. George Rountree*, for the defendant.

ASHE, J., (after stating the facts as above). We are unable to find error in any of the rulings of the Judge in the Court below, which have been excepted to by the prisoner.

There is none in the first exception. It has been so often held by this Court, that in petty larceny there are no accessories, that we did not suppose that question would be brought again before us. But we find it here presented in this record and gravely insisted upon. It is familiar learning that in treason and petty larceny there are no accessories. The distinction between grand, and petty larceny was abolished by the act of 1856, Rev. Code, ch. 34, sec. 36, *The Code*, §1075; and in *State* v. *Tyler*, 85 N. C., 569, it was held that the effect of this statute was to reduce all felonious stealing to the grade of petty larceny, and in *State* v. *Fox*, 94 N. C. 228, it was decided, that there are no accessories before the fact in petty larceny, for not only those who did the act, but all who advise, counsel or procure the act to be done, are principals. So in *State* v. *Borden*

1 Dev., 518; it was decided, "that whoever procures a felony to be done, although it be by the instigation of a third person, is an accessory before the fact, and that which in felony makes a person an accessory before the fact, in petty larceny and misdemeanors makes him a principal."

The second exception is equally untenable as the first. The Court charged in substance, that if the meat after being stolen, was directed by the defendant to be carried to a certain place, he at the time knowing that it had been stolen, it was a receiving in the eye of the law. To constitute the criminal offence of *receiving*, it is not necessary that the goods should be traced to the actual personal possession of the person charged with receiving. It would certainly make him a *receiver* in contemplation of law, if the stolen property was received by his servant or agent, acting under his directions, he knowing at the time of giving the orders that it was stolen, for *qui facit per alium facit per se.* It is the same as if he had done it himself. The defendant, if the witnesses were to be believed, was the instigator, prime mover and manager of the nefarious transaction from beginning to end. Those who took the hogs from the pen, killed and cleaned them and carried them to the still-house, were his pliant tools, acting all the while under his orders. For at every stage of the transaction they went to him to know what was next to be done. After they were taken from the pen, they went to him to know what was to be done with them. He said, "kill them." They were killed. The next night they went to him again for directions as to what was to be done with the meat, and he told them to put it in the still-house, to which place it was accordingly carried, and a few days afterwards he told Holland that some one had taken some meat he had at the still-house. This was an admission of his having possession of the meat. But it is needless to pursue this point further, for the jury rendered a general verdict, and when that is the

case on a trial of a criminal action where there are several counts in the indictment, and testimony is offered with respect to one only, it will be presumed to have been given on that count to which it was applicable, State v. Long, 7 Jones, 24, and when one of two counts in an indictment is bad, a general verdict will be supported by that which is good; State v. Beatty, Phil., L. 52. So that there being a general verdict in this case, when the punishment is the same, it is immaterial whether the evidence is applicable to the one count or the other. .

The last exception is as devoid of merit as the others. It was directed to the refusal of the Judge, to charge that the jury ought not to convict upon the unsupported testimony of an accomplice. His Honor could not have given such a charge, for it is settled law in this State, that a person may be convicted upon the unsupported testimony of an accomplice, if the testimony produce conviction of its truth upon the mind of the jury, and as the Judge told the jury in his charge upon the point, "they were the sole judges of the testimony." In State v. Weir, 1 Dev., 363; when one of the questions under consideration was whether an accomplice was a competent witness, TAYLOR, C. J., speaking for the Court, said: "It is now settled that his evidence may be left to the jury, who, if they believe him, may convict the prisoner." To the same effect is State v. Haney, 2. D. & B. 407.

If a prisoner may be convicted upon the unsupported testimony of an accomplice, certainly he may be when the testimony is corroborated, as it was in the case by Rouse, who testified to seeing the cart tracks going from the old field, where he saw signs of hogs having been recently cleaned, to the still-house; and by Holland, who stated what the defendant said to him about this meat having been taken from the still-house.

There is no error.

No error.                                        Affirmed.