(No. 19417.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RUDOLPH DALKE, Plaintiff in Error.

*Opinion filed October 19, 1929.*

LEO D. SCHEIN, and JULIUS H. GROSS, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and MERRILL F. WEHMHOFF, (EDWARD E. WILSON, of counsel,) for the People.

Mr. COMMISSIONER PARTLOW reported this opinion:

Charles and Rudolph Dalke, who are brothers, were indicted by the grand jury of Cook county for receiving stolen property consisting of 269 dresses, of the value of $2.75 each, the property of Isadore Finkelstein. Rudolph was found guilty, he was sentenced to the penitentiary, and he has prosecuted a writ of error from this court to review the judgment.

The evidence consists of the testimony of Finkelstein and three police officers on behalf of the People and of the brothers on the other side. It shows that the brothers lived alone in a four-room frame house at 1524 Walton street, in Chicago. Charles was a painter and Rudolph was a taxicab driver. Charles testified that on September 4, 1928, he did some painting next door to his home until about 10:30 P. M. He then went home and went to bed. Rudolph testified that he worked at night but on the night of the robbery his car was in the shop, being repaired. He waited for it until 1:30 A. M., and then went home, where he found his girl waiting for him. She was a waitress and always came to his home when she was through with her work and he took her home.

About midnight, September 4, 1928, the store of Isadore Finkelstein, at 1532 West Chicago avenue, was burglarized and 269 dresses were stolen. Shortly afterwards the attention of officers Buck and Shea was called to the burglary. They went to the store and found some men standing on the corner near by. They talked with some of these men and went immediately to the Dalke home. As they approached the house they saw a car drive away from the rear. Shea went to the back door and Buck went to the front door. Buck rapped on the door and demanded admission, stating that they were police officers. The girl jumped through a window and Rudolph hid in a closet. Buck saw the girl jump from the window. He drew his gun and ordered her to stop. The only clothing she had on was a pink slip. Buck made her go back through the window and he followed her into the house. He opened the back door and admitted Shea. They searched the house and found the dresses in a back bed-room, covered with a blanket. In the front room they found Charles in bed, apparently asleep. They did not find Rudolph. They remained at the house until about five o'clock A. M. and then

took Charles and the dresses to the station. The dresses were identified by Finkelstein as his property, which had been stolen. Officer Martinsen went to the house about 7 o'clock A. M. He searched the house and found Rudolph asleep in the closet. The officer asked him how long he had been in the closet, and he said about three hours.

Rudolph testified that when he reached home on the morning of September 5, 1928, at 1:30, the girl was there and that she had been there since about 10:30 P. M. He saw Charles in bed, asleep. Rudolph and the girl had an argument and she jumped through the window. After this he heard a knock on the door and somebody yelled, "Let us in! We are police officers!" He hid in the closet because he thought the girl had called the police because they had an argument and a fight. He slept in the closet until the following morning at seven o'clock, when he was awakened by officer Martinsen, who took him to the police station and locked him up. He testified he did not know at that time that there were any stolen dresses in the back bedroom and the officer told him about it later. He testified that a man by the name of Johnson, whom he had known about eight or ten months, told him a day or two before this occurrence that he had some merchandise in storage on which he was paying storage charges; that he could not afford to keep them in storage and wanted to take them to the Dalke house until he could sell them. Johnson said he was in the jobbing business, buying and selling merchandise, and he asked when he could deliver the goods. Rudolph gave Johnson his key to the house and told him he could take the goods over at any time.

It will only be necessary to consider one of the errors urged, namely whether the evidence sustains the judgment. Before there can be a conviction for receiving stolen property the evidence must show, beyond a reasonable doubt, that the property has, in fact, been stolen by a person other

than the one charged with receiving the property; that the one charged with receiving it has actually received it or aided in concealing it; that the receiver knew that the property was stolen at the time he received it, and that he received the property for his own gain or to prevent the owner from again possessing it. (*People* v. *Knight,* 323 Ill. 567; *People* v. *Prall,* 314 id. 518; *Cohn* v. *People,* 197 id. 482; *People* v. *Barnhill,* 333 id. 150.) In *People* v. *Lardner, 296* Ill. 190, it was held that recent possession of stolen property is not evidence that the accused knew that it was stolen. In *People* v. *Ensor,* 310 Ill. 483, it was said: "Granting that the evidence justifies the conclusion that the automobile in question was in fact stolen and that it was found shortly thereafter in the possession of plaintiff in error, the presumption against plaintiff in error would be that he stole it himself. One person cannot be both the thief and the receiver of stolen property. He cannot receive stolen property from himself." There is no question but that this property was stolen and that it was found in the Dalke house. There is no evidence who stole the property, or that the accused knew it was stolen, or that he received it from another. Under the facts in evidence the assumption would be that the accused stole the property himself and that he was guilty of larceny or burglary, but under the evidence he could not be found guilty of receiving stolen property.

The judgment will be reversed and the cause remanded.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded.*