(No. 22524.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER JUREK, Plaintiff in Error.

*Opinion filed October 22, 1934.*

NATHAN SCHWARTZ, (J. NORMAN GODDESS, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Walter Jurek was indicted and convicted in the criminal court of Cook county. He was charged with receiving stolen property. His trial was had before the court without a jury on September 19, 1933. Motions for a

new trial and in arrest of judgment were overruled and judgment was entered sentencing him to the penitentiary. The case is here on a writ of error.

The indictment charged Jurek (who is hereinafter for convenience called the defendant) and four others, viz., Zavattaro, Lysien, Menkicki and Franz, with receiving stolen property, consisting of one automobile, five tires and five wheels, the goods and personal property of Thomas J. Cody. The defendant was the manager of his father's garage. Franz, his co-defendant, was the night-man at the garage. Jurek was in charge during the day.

The defendant admitted that on February 20, 1933, he had a conversation with Mario Zavattaro and Raymond Lysien, who testified for the People. Thomas J. Cody testified that on that afternoon he parked his Plymouth automobile in front of the Holy Cross Hospital. An hour later, when he returned, the car was gone, and when he next saw it the head-lights, five wheels and tires were missing. Zavattaro and Lysien testified that they stole the Plymouth car, stripped it and took the wheels and tires that same night to the defendant's garage. This was about 10:30 o'clock. They deposited the property in the greasing pit, and Franz gave Zavattaro two dollars on his request for money with which to buy a meal at a restaurant.

The testimony as to the conversation above mentioned is relied upon to establish a receipt of the stolen property by Jurek. He testified that on the day in question Zavattaro and Lysien approached him in the garage office and said they would like to make some money by selling tires and wheels. There was a discussion as to the price to be paid. While he was deliberating whether to buy from Zavattaro and Lysien, a friend and customer named Daniel Lyons called him aside and advised him not to buy the tires because they were apt to be stolen property. He testified he then told his co-defendants that he did not want to buy from them, and they replied they would not

bring the tires and wheels around but would try to sell them elsewhere. Lyons testified for Jurek. He said he stopped at the garage for gas on the day in question. He saw Jurek talking to Zavattaro and Lysien but did not hear any part of their conversation. Lyons said he had a conversation with Jurek, but he was not permitted to testify what the conversation was. Zavattaro testified that Jurek said he wanted certain tires and named the makes of automobiles which carried them. Zavattaro told Jurek that he and Lysien were going to steal the tires. He had talked and dealt with Jurek before February 20, 1933. They discussed the price Jurek was to pay for the tires and wheels. Lysien's testimony was that a conversation took place in Jurek's garage office on February 20, 1933. He said they were the only persons present, and that Zavattaro and he asked Jurek if Jurek wanted any wheels and tires. The defendant said he did and told them what kind he wanted. They discussed the price and Zavattaro told Jurek they would bring them in. Jurek cautioned them to be careful how they came into the garage. They were not to drive in during the daytime or if the police were there. Lysien says Jurek told them that otherwise they were to drive right into the garage and put the stuff there.

Five points are relied upon by the defendant for a reversal of the judgment. They are, that the evidence fails to establish that he received the stolen goods; that the evidence as a whole was insufficient to establish his guilt beyond a reasonable doubt; that it was error to try him before the court without a jury, since he had not waived trial by jury; that the evidence failed to establish the ownership of the property as alleged, and that the trial court erred in excluding certain testimony offered on his behalf.

The trial judge saw and heard the witnesses, and while the testimony of Jurek's co-defendants must be closely

scrutinized, because it is upon this testimony, if at all, the judgment of conviction must be sustained, we are not prepared to say that there was error in giving credence to that testimony. (*People* v. *Schaeffer*, 353 Ill. 509.) If Jurek contracted to buy property which Zavattaro and Lysien informed him they were about to steal or had stolen, and if they were directed not to come to the garage in the daytime or when police officers were present but otherwise to drive right in and leave the "stuff," it would not be necessary for Jurek to come into actual, manual possession of the stolen property. It would be sufficient that the property was delivered to Franz, another co-defendant, the night-man at the garage of which Jurek was manager. Bishop, in his new Criminal Law, vol. 2, sec. 139, 53 Corpus Juris, p. 505, *State* v. *Stroud*, 95 N. C. 626, *Huggins* v. *State*, 4 Ala. 393, and *United States* v. *LeFanti*, 255 Fed. 210, are in point in support of this holding. The statement in Corpus Juris is: "But he has such constructive possession * * * where by his direction the goods are deposited in a place subject to his control."

The two cases cited by the defendant and relied upon by him (*People* v. *Dalke*, 336 Ill. 446, and *People* v. *Ensor*, 310 id. 483,) turn on the point that the evidence showed a theft by the defendant rather than a receipt of stolen property. They do not hold that there may not be a receiving of stolen property by the defendant through his agent. Those cases hold that there must be proof of an actual receiving of the stolen goods by the defendant or that he aided in concealing the goods. Such actual delivery is shown by this evidence.

If the defendant's testimony that he refused to buy and his co-defendants stated that they would attempt to sell elsewhere were true they would scarcely have brought the tires and wheels direct to his garage immediately after they had stripped the car. The defendant admits having

had a conversation about the purchase of suspicious goods. We cannot say that the court erred in believing the testimony of Zavattaro and Lysien and in not believing Jurek.

The question as to whether the evidence sustains the verdict is bound up with and is answered by what has already been said on the point made by the defendant with reference to the sufficiency of the evidence to show that he received stolen property. The only question about which there is a controversy is as to what was said in the conversation between the defendant and Zavattaro and Lysien. It is true that Zavattaro and Lysien differed as to who brought up the subject and started the conversation about what tires, wheels and head-lights Jurek was willing to buy. This sort of a variation in their testimony does not obscure the main facts about which they agree. Such facts are, that they had the conversation with Jurek and that he wanted to buy nineteen-inch wheels and tires, that he fixed prices on the various items, and that he knew the property was already, or was to be, stolen. We have already pointed out the fact that it would be passing strange if his story were true that he refused to buy because he was afraid the goods were stolen and if Zavattaro and Lysien said they would sell elsewhere, if they then stole a car, stripped it and brought the stolen parts Jurek discussed with them in the afternoon of that day to his garage that night. The circumstance is in evidence that Franz received this property as night-man at the garage, gave the thieves two dollars to buy food with and made no objection to all this irregular proceeding. These facts, which are uncontradicted, taken with the fact of the conversation between Jurek and the two thieves, support the testimony of the thieves and make highly improbable the testimony of the defendant. The court not only had the duty to scrutinize closely the testimony of these two self-confessed felons, but it had the right to take into consideration the interest the defendant had in the outcome

of this prosecution. We have held the testimony of the thieves alone sufficient to support a conviction on a charge of receiving stolen property. (*People* v. *Baskin,* 254 Ill. 509.) The weight to be given the evidence is a matter that was peculiarly within the province of the trial court. (*People* v. *Sciales,* 353 Ill. 169.) Its judgment will not be disturbed unless it is plainly apparent that the defendant was not proved guilty of the charge in the indictment beyond a reasonable doubt. Such a case is not disclosed by this record.

The defendant insists that he did not expressly waive a trial by jury, and that therefore it was error for the court to conduct the trial without a jury. With reference to the waiver, all that appears in the abstract is found on page 5. The language found there with reference to this matter is: "Arraignment of defendant Walter Jurek and plea of not guilty. Arraignment of defendant John Franz and plea of not guilty. Jury waived." From the abstract it appears that both of these defendants waived a trial by jury. This contention, therefore, cannot be considered.

Jurek earnestly contends that the proof does not establish the ownership of the stolen property in Cody, as alleged in the indictment. Cody testified that he parked his 1931 four-door Plymouth sedan in front of the Holy Cross Hospital from 4:00 o'clock to 6:00 o'clock in the afternoon of February 20, 1933. When he came back it was gone. Next day he found it, stripped of its headlights, five wheels and tires, at Twenty-third street and Prairie avenue. Without objection Zavattaro testified that he, Lysien and a third man, called "Daffy," stole Cody's 1931 Plymouth four-door sedan from in front of the hospital between 4:00 and 6:00 o'clock in the afternoon of February 20, 1933. Lysien said they stole the car from the neighborhood of that hospital. They took the car to an alley adjacent to the block between 2200 and 2300 Irving

avenue, where they stripped it. From there they took the stolen wheels, etc., to the garage over which Jurek was manager, as already set out. While Cody did not identify the wheels, etc., as his property, we cannot agree that this evidence fails in any way to establish the ownership of the stolen property in Cody.

The defendant, Jurek, says it is error for the court to have sustained the objection to the testimony of Daniel Lyons as to a conversation he had with Jurek while Zavattaro and two others were present at the garage on February 20, 1933. Jurek had testified that he had such a conversation with Lyons and that Lyons had warned him not to buy the tires, etc., because he could not determine whether or not the goods were stolen. Lyons admitted that he heard nothing that was said by Zavattaro and the others in their conversation with Jurek. He says he asked Jurek what the other conversation was about and what the men were doing there at the garage. It is not contended that Lyons' conversation with Jurek is binding upon the People, but it is claimed that the fact that he warned Jurek would aid the court in determining who told the truth as to what was said between Jurek, Zavattaro and Lysien. We held in *People* v. *Mulvaney*, 286 Ill. 114, that statements of two men that the lights on their automobile had gone bad and that they could go no further but would call for their automobile later were admissible in a trial for receiving stolen property, as a part of the *res gestæ*. The defendant seeks to extend this holding to include the supposed warning given by Lyons to him. In *Carle* v. *People*, 200 Ill. 494, we said: "Plaintiff in error sought to show that after he had been twice in the saloon of Kelly that evening, and at about 11:00 o'clock, he met O'Brien near the saloon and had a conversation with him with reference to going after the package. [A package of tailor's samples.] There was no error in excluding this testimony, as it was not competent. O'Brien was a witness called

by the defense, and it was sought to show by him what Carle had said to him in the absence of the deceased and while they were alone together, standing upon the street. To admit proof of this kind would have been to permit the plaintiff in error, Carle, to make evidence for himself by proving statements that he made to third persons, not in the presence of the deceased. Plaintiff in error was permitted to state, when he was on the stand, that he went to the saloon, as well when he visited it the third time as when he visited it the first time, in order to get the package already referred to. He thus succeeded in placing before the jury his own statement that his object in going there was to get the package and not to provoke a difficulty with the deceased or to kill the latter." (See, also, *People* v. *Gallagher*, 211 Ill. 158, at page 167.) The court did not commit error in refusing to admit Lyons' testimony as to the conversation between him and Jurek.

For the reasons indicated the judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*