(No. 26999.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* NOAH D. RIFE, Plaintiff in Error.

*Opinion filed March 16, 1943—Rehearing denied May 14, 1943.*

590

WALTER V. DYSERT, (A. B. DENNIS, of counsel,) for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and WILLIAM T. HENDERSON, State's Attorney, (THOMAS A. GRAHAM, JOHN T. ALLEN, and FRANK J. MEYER, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Noah D. Rife, and his wife, Mabel, operators of a junk yard in the city of Danville, were jointly indicted at the January term, 1941, of the circuit court of Vermilion county, charged in three counts with receiving, buying and aiding in concealing 132 pounds of engine brass and 167 pounds of journal brass, and in a fourth count with receiving, buying and aiding in concealing 299 pounds of brass, all of the property of and stolen from Benjamin Wham, trustee of the Chicago and Eastern Illinois Railway Company, a corporation. Each of the counts charged that defendant knew that said brass had been stolen. Defendants pleaded not guilty and were tried by a jury. Plaintiff in error was found guilty and the value

of the property received was found to be $9.35. His wife, the other defendant, was found not guilty. Motion for a new trial was denied and plaintiff in error was sentenced to the Illinois State Penal Farm at Vandalia for one year 'and fined $1000. A writ of error was sued out of the Appellate Court for the Third District, and on May 20, 1942, the Appellate Court affirmed the judgment of the circuit court. A petition for rehearing was denied, and defendant has sued out this writ of error for a further review.

The roundhouse foreman in the Chicago and Eastern Illinois railway yards at Chicago, in October, 1940, supervised the replacing of brass on engines 3643 and 1908. The old brass taken off these engines was loaded into two freight cars, sealed and shipped to the railroad shops or roundhouse at Danville. One of these cars arrived on October 22, 1940, and was unloaded and put in the bins at the Danville shops on October 22 and 23. The other car came in November 2, 1940, and from that time until it was unloaded on November 8, stood upon the company's track at the storeroom in the Danville yards of the C. & E. I. On November 5, 1940, plaintiff in error bought 187 pounds of railroad brass from a negro boy named Henry Brandon. On the day previous he had also bought brass from Brandon. On November 5, 1940, W. B. Sloan, the chief of police of the railway company, Theodore Alberts, general foreman of the company, and Robert Meade, a deputy sheriff, went to the junk yard of plaintiff in error, where they recovered 132 pounds of railway-engine brass and 167 pounds of journal brass. This brass was positively identified by Mr. Alberts from the engine numbers, 3643 and 1908, and the patent number A-D 830 stamped on the various pieces.

The contention is made that the evidence is not sufficient to prove beyond a reasonable doubt that the brass described in the indictment was ever stolen, and also that

the evidence is not sufficient to prove beyond a reasonable doubt that plaintiff in error knew the brass had been stolen at the time he purchased it from Henry Brandon. Before there can be a conviction for receiving stolen property the evidence must show beyond a reasonable doubt, first, that the property has, in fact, been stolen by a person other than the one charged with receiving the property; second, that the one charged with receiving it has actually received it or aided in concealing it; third, that the person so receiving the stolen property knew that it was stolen at the time of receiving it; and, fourth, that he received the property for his own gain or to prevent the owner from again possessing it. (*People* v. *Dalke,* 336 Ill. 446; *People* v. *Ensor,* 310 id. 483.) But while it is true that these four propositions must all be proved beyond a reasonable doubt, it is also true that neither is required to be established by direct evidence. Circumstantial evidence may be resorted to for the purpose of proving the *corpus delicti* as well as for the purpose of connecting the accused with the crime. (*People* v. *Gillespie,* 344 Ill. 290; *People* v. *Feeley,* 374 id. 402.) There is no invariable rule as to the *quantum* of proof necessary to establish the *corpus delicti.* Each case must depend, in a measure, upon its own particular circumstances. (*People* v. *Goodwin,* 263 Ill. 99.) Circumstantial evidence is legal evidence and there is no legal distinction between direct and circumstantial evidence so far as weight and effect are concerned. (*People* v. *Francis,* 362 Ill. 247.) It is not necessary that some-one testify, in so many words, to the theft of this brass and that plaintiff in error had knowledge of such theft at the time he purchased the brass from Henry Brandon, but such facts may be shown by circumstantial evidence. The brass found in the Rife junk yard was positively identified as brass which had been removed from the Chicago and Eastern Illinois engines in Chicago and shipped to Danville, within twenty days at the most, previous to that time.

It was conclusively proved by the evidence that this brass was shipped from Chicago to Danville for use in the railroad shops there, and received at the C. & E. I. shops at Danville, where it was in the exclusive possession of the railway company on its own private premises. It then disappeared. It must have been taken by somebody. The only conclusion that can follow, under all the circumstances, is that a larceny had been committed. There was no contention by the plaintiff in error on the trial that the brass was not stolen. Indeed, his wife testified that he had told her that Henry Brandon had stolen it. In the case of *People* v. *Feeley, supra,* where department-store merchandise, including shirts, ties, socks, and other wearing apparel, was discovered in an automobile, this court held that the fact that none of the articles had been wrapped in packages by the stores, but had been stuffed in large quantities in cardboard boxes, and the finding of the shoplifters' boxes in the automobile, were circumstances sufficiently proving the theft of such merchandise. In the *Feeley case, supra,* there was no evidence that the merchandise had been missed or was known to be stolen before found in the automobile. It is not necessary in the instant case, to warrant the jury in finding that a larceny of the brass had been committed, for the evidence to show that it had been missed by the employees of the Chicago and Eastern Illinois Railway Company or that they knew that it had been stolen.

Claude Mills, a deputy sheriff, testified that he and the sheriff were at the junk yard of plaintiff in error two or three times during the month of October, 1940, checking for stuff that had been stolen, and that they told Rife on these occasions that brass had been stolen from the railroad and also told him that if any of the brass came in and there was any ground that might be suspicious to notify the officers. The sheriff also testified that a little before the middle of October, 1940, he was at the junk yard, in

company with Mills, and had a conversation with Mr. and Mrs. Rife, in which he told them that people had been stealing brass, copper wire, and "stuff like that," and advised plaintiff in error not to buy any property he thought was "hot," but to call the sheriff. Harry Boucier, an employee of plaintiff in error at the time in question, testified that he was not working on November 5, 1940, but he saw Mr. and Mrs. Rife that evening at the Dixie lunch car, where he had a conversation with Rife in which Rife told him that he had a little business to take care of and wanted the witness to go with him, that the officers had been at his place that day and found railroad brass, and that he had something to get out of the way. The witness further testified that he then went with plaintiff in error to his place of business where they put some brass in sacks and a basket in the trunk of Rife's car, and the three of them, plaintiff in error, his wife, and the witness, then drove in Rife's car to the Diamond mine where they buried the brass in a slack pile and covered it up with slack; and that while they were there, Louis Byerly and his wife came down to the mine and Rife told Byerly that he had some stuff he wanted to hide away for a few days until the heat blew over. Byerly, operator of the mine, testified that on the night of November 5, 1940, he and his wife drove down to the mine, and saw there plaintiff in error, his wife, and Harry Boucier; that Rife came over to witness's car and talked to him, while Rife's wife sat in her car about fifteen or twenty feet away; that witness asked Rife what he was doing there, and Rife said he had come down there to hide some stuff; that when witness left Mr. and Mrs. Rife and Boucier were still there; that he did not see Boucier in Rife's car that night, but saw both Boucier and his car at the mine; that Boucier had not come in Rife's car but had driven his own car; that there were two other cars there that night besides witness's car; that he saw foot tracks from Rife's car to the slack pile; that on November

28, 1940, the sheriff and a deputy came to the mine and made inquiry, and on November 29 another deputy sheriff, Robert Meade, and Sloan, the Chicago and Eastern Illinois Railway Company chief of police, came down; that witness showed them where to dig, and upon digging into the slack pile they found about 600 pounds of brass in sacks and baskets; that on Saturday night, November 30, 1940, plaintiff in error accompanied by his wife came to witness's home and asked the witness to say, if he was called before the grand jury, that all plaintiff in error came down for on that particular night was to see the witness about buying some coal; that witness told him that he was not going to say anything until he saw a lawyer and plaintiff in error told him to go see a lawyer, and he would pay for everything. The witness further testified that Mrs. Rife also mentioned paying for the lawyer, and told the witness that if he did not testify as they wished he also might be implicated in it. Mrs. Byerly, wife of Louis Byerly, testified that about ten o'clock on the night of November 5, 1940, she and her husband drove to the mine; that she saw plaintiff in error and his wife there; that plaintiff in error came up and talked to witness's husband and witness heard him say he had come down to hide something. She also testified that there were two cars parked by the tipple not over two or three feet from the slack pile. Clint A. Larson, who was Byerly's partner in operating the mine, Sloan and Meade also testified that they were present when the brass was dug out of the slack pile.

Both plaintiff in error and his wife denied *in toto* the evidence of Boucier, Larson, Sloan, Meade, and Mr. and Mrs. Byerly, above set out. They testified that on the night of November 5, 1940, they drove down to the mine to see if there was any slack that should be moved from the mine because they had a contract with the mine to keep the slack hauled away, that Boucier did not go with them, but he was there when they arrived, and that he rode back with

them, leaving his car at the mine. They also denied positively that they had ever been warned· by the officers in regard to stolen brass, but admitted that they had never made any report to the sheriff or his deputies in connection with any brass. Plaintiff in error testified that when Brandon sold him the brass, he told him that the brass was not stolen, that he had found it, that it was all right for plaintiff in error to buy it, and that if anyone inquired he could say that he had bought it from Brandon. He also testified that the possession of a large amount of heavy brass by a negro boy who claimed to have found it did not arouse his suspicions. Plaintiff in error, for impeachment purposes, proved that Harry Boucier was indicted and pleaded guilty in 1938 to petit larceny.

There was no direct evidence that plaintiff in error purchased the brass in question knowing it to have been stolen. The People relied upon circumstantial evidence for such proof, but this does not militate against the prosecution. (*People* v. *Brunkala,* 359 Ill. 206.) Knowledge that property was stolen is seldom susceptible of direct proof, but may be inferred from all the surrounding facts and circumstances. ·(*People* v. *Racine,* 362 Ill. 602.) Circumstances which will induce a belief in the mind of a reasonable person that property has been stolen are sufficient proof of such guilty knowledge. (*People* v. *Grove,* 284 Ill. 429.) The knowledge need not be that actual or·positive knowledge which one acquires from personal observation of the fact, but it is sufficient if the circumstances accompanying the transaction be such as to make the accused believe the goods had been stolen. This knowledge of the accused is an essential element of the offense and must be found by the jury as a fact. In determining whether the fact existed, the jury will be justified in presuming that the accused acted rationally and that whatever would convey knowledge or induce belief in the mind of a reasonable person, would, in the absence of countervailing evidence, be sufficient to

apprise him of the like fact, or induce in his mind the like impression and belief. *Huggins* v. *People,* 135 Ill. 243.

In the instant case plaintiff in error, after recent and repeated warnings to be on the alert for stolen railroad brass and to notify the sheriff's office of any suspicious circumstances, failed to report the circumstance to the officers when a negro boy offered him a large amount of such brass with no explanation other than that he had found it and had not stolen it. Plaintiff in error made no inquiry into the details of the negro's improbable story of his acquisition of such a large amount of brass. The story of plaintiff in error, of his purchase of this brass in good faith and innocence, is not supported either by any direct or circumstantial evidence. On the contrary, all the evidence points conclusively to, and is sufficient to warrant the jury in believing, beyond a reasonable doubt, that plaintiff in error knew when he purchased this brass that he was handling stolen property. Certainly, the evidence in regard to his actions, on the same day and immediately after the officers had discovered the brass in question in his possession, in hiding more railroad brass in the slack pile, together with his statement that he wanted to hide some stuff until the heat blew over, and the subsequent attempt of plaintiff in error and his wife to influence the testimony of the witness Byerly, are all strongly indicative of a consciousness of guilt. Plaintiff in error denies that he ever concealed brass in the slack pile, and suggests that Boucier, an ex-convict, stole the brass and hid it in the slack pile himself. Boucier's prior conviction of petit larceny was in evidence and was for the consideration of the jury as to his credibility and the weight to be given to his testimony. The jury was afforded the opportunity of observing the conduct and demeanor of this witness while testifying, as well as all other witnesses both for the People and the plaintiff in error, and is therefore in a better position to determine the credibility and the weight to be accorded their testimony than

is a reviewing court. (*People* v. *Moore*, 362 Ill. 102.) In addition to the testimony of Boucier, Byerly and his wife, two disinterested witnesses whose veracity is not impeached, testified to the statement of plaintiff in error, made at the slack pile on the night in question, that he was down there to hide something. This, as well as all other damaging testimony against him, contained in the record, is denied by plaintiff in error, but it is no ground for reversal merely that the defendant and his witnesses deny the acts to which the People's witnesses testify. (*People* v. *Armour*, 307 Ill. 234.) All of the evidence, and facts and circumstances in evidence, in the instant case, when considered together, cannot consistently be reconciled with any theory other than that of the guilt of the accused. Upon a review of the record in a criminal case, it is the duty of this court to consider the evidence, and if it does not establish guilt beyond a reasonable doubt, the conviction must be reversed. We have carefully considered all of the evidence, both that of the People and that of plaintiff in error, and we cannot say that it is not amply sufficient to justify the jury in believing beyond a reasonable doubt that the plaintiff in error is guilty of the crime with which he is charged.

Plaintiff in error contends that it was error for the State's Attorney to ask Mrs. Rife, on cross-examination, if she was married to plaintiff in error, and when and where; that these questions could have no other purpose but to prejudice the jurors against the defendant by insinuating they were guilty of adultery and was an attempt to prove a separate and distinct offense. In view of the fact that the defendants put in evidence their marriage certificate, without objection, the jury could not have been prejudiced against the defendants by this cross-examination.

The admission of evidence in regard to the brass found in the slack pile is assigned as error, as an attempt to prove a separate and distinct offense. In a criminal case the guilt

of the accused cannot be established by showing that he committed offenses separate and distinct from the crime charged, but no principle of law forbids the introduction of relevant evidence tending to prove a fact material to the issue merely because the evidence discloses that the defendant committed other indictable offenses. (*People* v. *Lenhardt,* 340 Ill. 538.) That evidence offered proves or tends to prove an offense other than the one with which the accused is charged is never a valid objection to its admissibility, if such evidence is relevant and tends to prove any fact material to the issue. Evidence of other offenses wholly disconnected with the offense charged is not admissible for the reason that it does not tend to establish the fact in controversy, but whatever evidence tends directly to show the accused guilty of the crime charged, is competent, although it also tends to show him guilty of another offense. (*People* v. *Folignos,* 322 Ill. 304; *People* v. *Spaulding,* 309 id. 292.) In the case of *People* v. *Spaulding, supra,* upon the trial of a defendant for murder, evidence concerning the disappearance of an eyewitness to the killing, the discovery of his skeleton near the place where the defendant was living, and circumstances indicating an attempt to conceal the body and its identity were all held relevant and properly admissible notwithstanding such evidence tended to prove the defendant guilty of another and different murder. The evidence in regard to the brass in the slack pile was properly admissible as tending to show guilty knowledge on the part of plaintiff in error.

Plaintiff in error complains of instructions 3, 5, 6, 9 and 11, given at the request of the People. Instruction 3 is identical with an instruction given for the prosecution in the case of *People* v. *Lenhardt, supra,* wherein this court said there was no error in the giving of said instruction. While the giving of instructions defining reasonable doubt, especially when they are long and involved, has been repeatedly criticised by this court on the ground that the

term itself is usually more clear than any elaboration of it, and an attempted definition serves more to confuse than to enlighten the jury; (*People* v. *Shapiro*, 371 Ill. 234,) yet the giving of such instruction has never been held to be reversible error even in capital cases. This court has affirmed the death penalty notwithstanding the giving of instructions on the subject of reasonable doubt in the cases of *People* v. *Lenhardt, supra, People* v. *Shapiro, supra,* and *People* v. *Birger,* 329 Ill. 352. Instruction 5 objected to by plaintiff in error was approved by this court in the case of *People* v. *Guido,* 321 Ill. 397. While the giving of this instruction would be improper in a case where all the evidence was direct, (*People* v. *Barnett,* 347 Ill. 127,) there being circumstantial evidence in the instant case, this instruction was properly given. (*People* v. *Barnett, supra.*) People's instruction 11 was approved by this court in the case of *People* v. *Grove, supra.* People's instruction 6 is also on the subject of circumstantial evidence and is as follows: "The court instructs the jury that circumstantial evidence is sometimes as binding as direct evidence and you are not to disregard circumstantial evidence, if any there be introduced in this case, and, if you believe from the facts and circumstances in evidence and from the direct evidence introduced, beyond a reasonable doubt, that the defendants or either is guilty as charged, you should so find by your verdict." Neither this nor instructions 5 and 11 complained of by plaintiff in error is subject to the objection urged that the jurors are, by these instructions, constituted the judges of the law as well as the facts and that by these instructions the jurors were left at liberty to consider the circumstance that plaintiff in error was in possession of this brass, or that he purchased it from a colored man, or that he was a junk dealer, or any other circumstance appearing in the evidence, without regard to evidentiary quality as circumstantial evidence of his guilt. Instruction 11, given for plaintiff in error, states that possession of

stolen property is no evidence of guilt and that unless the prosecution proved, beyond a reasonable doubt, that the metals in question were stolen, and that they received them, knowing at the time they were stolen metals, the defendants could not be convicted. Instruction 9 given for plaintiff in error told the jury that what is meant by circumstantial evidence in criminal cases is proof of such facts and circumstances connected with or surrounding the commission of the crime charged as tend to show the guilt or innocence of the parties charged, and further instructed the jury that to justify a conviction on circumstantial evidence it is not only necessary that the circumstances all concur to show that the defendants committed the crime, but on the contrary that the circumstances must be such that they are inconsistent with any other reasonable theory of their innocence. Considering the instructions objected to with reference to the other instructions given, and especially with reference to defendants' instructions 9 and 11, the jury was fairly and properly instructed, and there is no error in the instructions complained of. While an instruction which misstates the law cannot be cured by another which correctly sets forth the law upon the same subject, yet an instruction which is merely incomplete may be supplemented by other instructions. (*People* v. *Barnett, supra.*) It is not necessary that each instruction contain all the law either of the case or upon a given subject. (*People* v. *DeRosa,* 378 Ill. 557; *People* v. *Meisenhelter,* 381 id. 378.) It is sufficient if the series of instructions, considered as a whole, fully and fairly announce the law applicable to theories of the People and of the defendant, respectively. (*People* v. *DeRosa, supra.*) Plaintiff in error also complains of People's instruction 9, which instructs the jury in the language of the statute that in any prosecution for the offense of buying, receiving or aiding in the concealment of stolen property, or property obtained by robbery or burglary, knowing that the same was so ob-

tained, it shall not be necessary to aver or to prove on the trial that the person who stole, robbed or took the property, has been convicted. The objection urged against this instruction is that it is a mere abstract proposition of law not connected in any way with the evidence in the case, that it assumes that the jury will find the defendants guilty, and fails to instruct them that the State must prove beyond all reasonable doubt that the defendants knew the property was stolen at the time they bought it. Considering this instruction with reference to the other instructions and taking all the instructions as a whole, there is no merit in this objection. This instruction does not assume that the jury will find the defendants guilty, but merely informs it as to one item which need not be proved.

It is further assigned as error that the trial court refused to give instruction 4 tendered by the defendants. This instruction is as follows: "The jury are instructed by the court, that if they can reconcile the evidence in this case upon any other reasonable theory or hypothesis than that of the defendant's guilt, it is your duty to do so and acquit the defendants." Instruction 3 given at the request of defendants is an instruction of similar import and is substantially a repetition of the refused instruction. Said given instruction is as follows: "If under all the evidence there are two reasonable conclusions that may be drawn from all of the evidence, one of guilt and the other of innocence, then under the law, if you may do so as reasonable men, it is your duty to adopt the conclusion of innocence rather than guilt, and find the defendants not guilty." Neither the State nor the defense is entitled to a repetition of instructions, and to restate a proposition of law in different language is but a repetition. (*People* v. *White*, 308 Ill. 210.) It is not error to refuse the giving of an instruction where another instruction given has substantially covered the points in the refused instruction. (*People* v. *Spaulding, supra.*) Hence, there was no error in refusing defendants' instruction 4.

It is contended that the circuit court erred in denying the motion of plaintiff in error for a new trial based on newly discovered evidence which rebutted the testimony of Harry Boucier, a witness for the People. The so-called newly discovered evidence is merely impeaching and not of such a character that it would probably change the result if a new trial were granted. There was no abuse of discretion in the overruling of the motion for a new trial. The evidence in this case fully sustains the verdict of the jury and there is no reversible error in the record.

The judgment will therefore be affirmed.

*Judgment affirmed.*